**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| VERA PALMER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case no. 4:06cv0391 TCM |
| ) | |
| CYNDI PRUDDEN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Vera Palmer, a Missouri prisoner serving a sentence of life imprisonment without probation or parole, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties' written consent. See 28 U.S. C. § 636(c).

## Background

Vera Palmer ("Petitioner") was charged in May 2000 with the first degree murder of her father-in law, Henry Henderson, and armed criminal action. (Resp. Ex. B at 9.) Before her jury trial began, the court heard evidence on her motion to suppress inculpatory statements. (Resp. Ex. A at 153-80.) Two detectives who separately interviewed Petitioner during the initial investigation of the crime testified that they did not give Petitioner any Miranda[1] warnings because she was not then a suspect and that, when first interviewed, Petitioner did not implicate herself in Henderson's murder. (Id. at 154, 156-57, 160.) Three

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

days later, the second detective and a third detective interviewed Petitioner again. (Id. at 161.) She was now a suspect. (Id. at 161.) The second detective advised her of her Miranda rights when he took her into custody. (Id. at 161-62.) The third detective again advised her of her rights before interviewing her at the police station. (Id. at 162.) Petitioner made an oral statement, but initially refused to give an audiotaped or videotaped statement. (Id. at 171.) She later gave a videotaped statement. (Id. at 176.) Another police officer interviewed Petitioner about two checks drawn on Henderson's bank account after his death. (Id. at 178-80.) He also advised her of her rights. (Id. at 179.) She made a verbal and a written inculpatory statement. (Id. at 179-80.) After hearing the officers's testimony and counsels' arguments, the court denied Petitioner's motion. (Id. at 182-87; Resp. Ex. B at 87.)

The evidence at trial was summarized as follows by the appellate court:

> [Petitioner] resided in an apartment with Victim [Henry Henderson], who was the father of her incarcerated husband. During the two years they lived together, [Petitioner] both used and sold heroin. Eventually, Victim's landlord told him to move. On April 1, 2000, [Petitioner] and Victim spend much of the day packing their belongings in preparation for moving. That evening, while [Petitioner] was running an errand, Victim discovered [Petitioner's] .22 caliber semi-automatic weapon and bag of black tar heroin hidden in the apartment. Upon [Petitioner's] return, he immediately and loudly confronted her with these items. She closed the apartment door so the neighbors would not hear Victim yelling at her. At the same time, Victim threw a soda can at her. He continued to yell and scream and repeatedly accused her of dealing drugs out of his apartment, lying to him, and causing him to be evicted.
>
> After a tussle, [Petitioner] got her gun from Victim. She then shot Victim three times from less than twelve inches away – once in each armpit and once in the back. Two of the bullets pierced a lung. He collapsed and eventually died from this wound. When [Petitioner] stepped in Victim's

spilled blood, she ran from the apartment and went to a nearby pay phone. She called a friend, Paul Allen, and asked him to come get her.

Allen and his brother, Michael Rice,[2] picked [Petitioner] up at the pay phone. [Petitioner] did not say anything about Victim. They drove back to Allen's uncle's home, where the three of them watched a basketball game. After an hour or two, [Petitioner] informed Allen and Rice that she was afraid Victim was injured, but she did not tell them she had shot him. The three of them returned to Victim's apartment, went inside, and discovered his body lying in a pool of blood. Upon being questioned by police, she stated she found Victim lying on the floor after returning from an errand. She also later implicated someone else in the crime, suggesting he had a motive and opportunity to kill Victim. After the police asked her to vacate the premises while they continued their investigation, she gathered up some clothes, but also removed all evidence of her drug dealing as well as Victim's driver's license and a bank withdrawal slip. Two days later, she used these latter two items to withdraw $1,000 from Victim's bank account.

For the remainder of April 2000, [Petitioner] slept on a couch at the home of Allen's uncle. On April 28, 2000, Allen and Rice, while cleaning, discovered a gun under the couch. They called the police, who forensically determined the gun was used to kill Victim. The police confronted [Petitioner] with their finding. She then confessed to shooting Victim. When asked for details, she replied, "I don't remember what happened. I know I fired the gun . . . . It wasn't supposed to happen. It was an accident."

(Resp. Ex. E at 2-3.)

The jury returned a verdict of guilty of first degree murder and armed criminal action. (Resp. Ex. B at 120-21.) After the jury was discharged, trial counsel told the court that a juror had approached him and told him that he (the juror) knew someone in Henderson's family. (Resp. Ex. A at 371.) He only knew her as "Lulu," had never spoken to her, and had seen her on occasion when he visited his father. (Id.) Plus, an alternate juror had told him

---

[2]Allen and Rice both testified at trial as State witnesses.

- 3 -

that she had "run" Petitioner's name and found prior convictions relating to "some shooting, some prior husband or something like that." (Id.) Trial counsel requested a mistrial. (Id. at 372.) His request was denied. (Id.)

Two months later, the court sentenced Petitioner as a persistent offender to life imprisonment without probation or parole on the murder charge and a concurrent thirty-year term on the armed criminal action charge. (Resp. Ex. B at 140.)

Petitioner appealed on the grounds that the evidence was insufficient that she killed Henderson knowingly or deliberately. (Resp. Ex. C at 12.) Her appeal was denied. (Resp. Ex. E.)

Petitioner then moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, raising claims of trial court error and ineffective assistance of trial and appellate counsel, including claims that trial counsel was ineffective for failing to call a witness whose testimony would have supported a voluntary manslaughter charge. (Resp. Ex. F at 3-25.) Petitioner was appointed counsel, who moved for leaved to contact juror Daniel McCowan and alternate juror Priscilla Carothers. (Id. at 26-30.) Counsel wanted to inquire into whether McCowan knew Henderson or his family. (Id. at 28.) McCowan had not raised his hand when the panel was asked whether anyone knew Henderson. (Id.) He later told trial counsel that he knew someone in Henderson's family; however, he did not give his name and did not want to address the court. (Id. at 26.) Carothers told trial counsel that "she had

connections" and knew that Petitioner had a prior conviction for homicide.³ (Id.) Counsel wanted to inquire into how Carothers learned anything of Petitioner's criminal history and whether she told anyone on the jury about her findings. (Id. at 29.) Counsel also filed an amended motion for post-conviction relief. (Id. at 31-47.) He advised the court during a status hearing that the only issues were those relating to ineffective assistance of counsel with respect to the jury misconduct allegations. (Id. at 82.) The court denied his request to contact the two jurors. (Id.) The next month, counsel filed a motion to physically attach Petitioner's pro se motion to the amended motion. (Id. at 31-47.) The State opposed this approach. (Id. at 80-81.)

The motion to attach was denied. (Id. at 84.) Noting that (a) McCowan had only said he knew someone in Henderson's family, had not indicated who or how, and had indicated during voir dire that he did not know Henderson, and (b) Carothers was an alternate and Petitioner did not have a prior homicide conviction, the court denied the post-conviction motion without an evidentiary hearing. (Id. at 82-84.)

Petitioner appealed. (Resp. Ex. G at 4.) She argued that (1) the motion court had erred by denying without an evidentiary hearing her request to contact the two jurors and trial counsel was ineffective for failing to request leave to contact the two jurors, and (2) the motion court erred in denying her leave to physically attach her pro se motion to her

---

³Petitioner's status as a persistent offender was based on two felony stealing convictions, not on any homicide charge.

amended motion. (Resp. Ex. H at 17, 18.) The appellate court rejected both arguments, finding, in relevant part, as follows.

> [Petitioner] was charged with murder in the first degree and armed criminal action based on evidence that she shot and killed her father-in-law, Henry Henderson ("Victim"). After the jury returned a verdict of guilty on both counts, [Petitioner's] trial counsel ("Counsel") informed the trial court that one of the jurors and one of the alternate jurors revealed information to him that could indicate jury misconduct. In particular, juror Daniel McCowan ("Juror") told Counsel during discussions after the case concluded that he recognized one of Victim's family members as a person called "Lulu" when she entered the courtroom during trial. Juror stated that he had never had a conversation with the person he recognized but that he believed the person knew his father. Juror did not want to address the court and did not say whether or not recognizing Lulu affected him in any way.
>
> In addition, alternate juror Priscilla Carothers ("Alternate Juror") told Counsel that she ran [Petitioner's] name and discovered a prior conviction of [Petitioner] involving a shooting of [Petitioner's] husband. Alternate Juror also did not want to speak with the court. As a result of this information, Counsel orally moved for a mistrial based on Juror's knowledge of a member of Victim's family. The trial court denied Counsel's oral motion.

(Resp. Ex. I at 2.) The appellate court further found that, had trial counsel obtained the additional information sought about, he would not have been successful in persuading the trial court to grant a new trial. (Id. at 5.) He had not asked the jurors during voir dire if they knew any members of Henderson's family and had asked only if Henderson's name sounded familiar. (Id.) Thus, McCowan did not intentionally withhold any knowledge of Henderson's family. (Id.) Also, McCowan did not know Lulu's last name and did not recognize her until she came to the courtroom during the trial. (Id.) Any information about Carothers's communications with other jurors, even had there been some, "would likely not [have been] admissible." (Id. at 6.) Additionally, trial counsel had stated in his motion for

new trial that Carothers had not told him that she had communicated her knowledge to the other jurors. (Id.)

Petitioner now seeks federal habeas relief on four grounds. First, her arrest and the seizure of evidence[4] pursuant to that arrest violated the Fourth and Fifth Amendments. Second, evidence relating to an uncharged crime, i.e., forgery of Henderson's checks, was unlawfully admitted. Third, she was found guilty by a jury that included a man who did not disclose that he knew Henderson's daughter[5] and that included an alternate who claimed to know of a prior conviction of Petitioner for shooting her husband. Fourth, she was denied the effective assistance of counsel when counsel (a) did not present the testimony of an available witness, Charlene Pye, who had told the police that she heard a struggle before the shooting, testimony which would have supported a voluntary manslaughter charge, and (b) did not ask the trial court for leave to contact the jurors after learning of the misconduct, thereby failing to preserve the issue for appellate review. Also in her petition, Petitioner explains that she did not exhaust her state remedies on the first three grounds because post-conviction counsel failed to attach her pro se Rule 29.15 motion to his amended motion. She did not exhaust her state remedies on the fourth ground because counsel failed to file a

---

[4]The evidence was $980 seized from Petitioner when she was questioned at the police station. Two checks in the total amount of $1,000 had been drawn on Henderson's account after his death.

[5]The only reference in the record to the person being Henderson's daughter is in Petitioner's memorandum in support of her petition. (See Pet. at 11.)

motion for rehearing or transfer. For all grounds, she further explains that she was not aware of the ambiguous post-conviction rules.

Respondent contends that the four grounds are procedurally barred and without merit. And, the Fourth Amendment claim in the first ground is non-cognizable under the doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

### Discussion

Ground One: Fourth Amendment. Petitioner's motion to suppress her inculpatory statements was denied following a hearing at which three detectives testified about the circumstances under which those statements were made. She argues in this proceeding that the admission at trial of her statements violated her Fourth Amendment rights.

It is well established that "[a] Fourth Amendment claim of an unconstitutional search or seizure is not cognizable in a habeas corpus action unless the state has not 'provided an opportunity for full and fair' litigation of the claim." **Sweet v. Delo**, 125 F.3d 1144, 1149 (8th Cir. 1997) (quoting <u>Stone</u>, 428 U.S. at 494). Accordingly, a federal court is "not empowered to examine whether the Missouri courts made errors of law in deciding the Fourth Amendment issues argued by [a habeas petitioner]." **Id.** A federal court is empowered to review a petitioner's Fourth Amendment claim "'(a) if the state had provided no *corrective procedures at all* to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process*.'"

motion for rehearing or transfer. For all grounds, she further explains that she was not aware of the ambiguous post-conviction rules.

Respondent contends that the four grounds are procedurally barred and without merit. And, the Fourth Amendment claim in the first ground is non-cognizable under the doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

### Discussion

Ground One: Fourth Amendment. Petitioner's motion to suppress her inculpatory statements was denied following a hearing at which three detectives testified about the circumstances under which those statements were made. She argues in this proceeding that the admission at trial of her statements violated her Fourth Amendment rights.

It is well established that "[a] Fourth Amendment claim of an unconstitutional search or seizure is not cognizable in a habeas corpus action unless the state has not 'provided an opportunity for full and fair' litigation of the claim." **Sweet v. Delo**, 125 F.3d 1144, 1149 (8th Cir. 1997) (quoting <u>Stone</u>, 428 U.S. at 494). Accordingly, a federal court is "not empowered to examine whether the Missouri courts made errors of law in deciding the Fourth Amendment issues argued by [a habeas petitioner]." **Id.** A federal court is empowered to review a petitioner's Fourth Amendment claim "'(a) if the state had provided no *corrective procedures at all* to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process*.'"

**Willett v. Lockhart**, 37 F.3d 1265, 1271 (8th Cir. 1994) (quoting Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992)) (emphasis in citing source); accord **Chavez v. Weber**, 497 F.3d 796, 802 (8th Cir. 2007). "A determination of whether there has been a breakdown in the state's procedure does not require a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of the Fourth Amendment principles to those facts." **Willett**, 37 F.3d at 1272. Thus, "[t]he federal courts on habeas review of [Fourth Amendment] claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." **Id.** at 1273. Additionally, "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." **Chavez**, 497 F.3d at 802 (internal quotations omitted).

Clearly, the trial court provided such an opportunity. Testimony was heard; arguments in support of and in opposition to the motion to suppress were made. Petitioner's quarrel with the subsequent denial of her motion is not cognizable in this § 2254 proceeding.

<u>Grounds One through Four: Procedural Default.</u>  Petitioner also argues in her first ground that the admission of her statements and the seizure of evidence violated her Fifth Amendment rights. Her second ground alleges an unconstitutional admission of evidence relating to an uncharged crime. Her third ground alleges juror bias and misconduct. These claims were raised in her motion for new trial, see Respondent's Exhibit B at 134-37, but

were not raised in her direct appeal. In Missouri, trial errors, including constitutional claims, known to a defendant must be raised in a direct appeal. See **Phillips v. State**, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007); accord **Antwine v. Delo**, 54 F.3d 1357, 1371 (8th Cir. 1995). See also **Kenney v. State**, 46 S.W.3d 123, 130 (Mo. Ct. App. 2001) (claim that evidence of uncharged crime was improperly admitted could not be raised in post-conviction proceeding).

"To be eligible for federal habeas corpus relief, a state prisoner must first 'exhaust [her] state law remedies and fairly present the facts and substance of [her] habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotations omitted). "'If a petitioner has not presented [her] habeas corpus claim to the state court, the claim is generally defaulted.'" **Id.** (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); accord **Clay v. Norris**, 485 F.3d 1037, 1039 (8th Cir. 2007); **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998). If the claim is defaulted, the state courts are closed to the petitioner. **Clay**, 485 F.3d at 1039. If the state courts are closed to the petitioner, the defaulted claims may not be reached "unless [the petitioner] can meet strict cause and prejudice or actual innocence standards." **Collier v. Norris**, 485 F.3d 415, 425 (8th Cir. 2007) (internal quotations omitted); accord **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's

efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 958 (8th Cir.) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)), cert. denied, 128 S.Ct. 672 (2007). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [her], something that cannot fairly be attributed to [her],' caused the procedural default." **Id.** (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).

Petitioner has advanced only two explanations for her default: (1) post-conviction counsel's failure to attach her pro se motion to the amended motion, and (2) ambiguous post-conviction rules. Neither establishes cause. First, the default occurred at the direct appeal stage, not in the post-conviction proceedings. Second, the ineffective assistance of post-conviction counsel cannot be cause for a procedural default. See **Schawitsch v. Burt**, 491 F.3d 798, 804 (8th Cir. 2007); **Simpson v. Norris**, 490 F.3d 1029, 1033-34 (8th Cir. 2007), cert. denied, 128 S.Ct. 1226 (2008). Moreover, even had Petitioner alleged that the default at the direct appeal stage was caused by the ineffective assistance of appellate counsel, such claim would be unavailing because she has not presented that claim to the state courts as an independent ground. See **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003); **Williams v. Kemna**, 311 F.3d 895, 897 (8th Cir. 2002).

Because Petitioner has not established cause for her default of her first three grounds, the question of prejudice need not be reached. See **Schawitsch**, 491 F.3d at 804.

The merits of Petitioner's first three grounds may still be reached if she shows actual innocence. **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007). She does not claim such, nor has she even alleged that new evidence of her innocence exists. **Id.**

Petitioner did not raise in her post-conviction appeal her claim that her trial counsel was ineffective for not calling Pye to testify about a struggle she heard before shots were fired. She raised this argument in her pro se motion, but not in her amended motion. Rule 29.15(g) sets forth time limits for the filing of an amended motion.[6] Mo.S.Ct.R. 25.15(g). The appellate court found that Petitioner's request to physically attach her pro se claims to the amended motion was made after the time limits in Rule 29.15(g) passed. (Resp. Ex. J at 8.)

"'[O]nly a firmly established and regularly followed state practice' is a procedural bar to federal habeas review." **Clay**, 485 F.3d at 1040 (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). "'[S]tate procedural rules not strictly or regularly followed may not bar [the Court's] review.'" **Id.** (quoting Dixon v. Dormire, 263 F.3d 774, 781 (8th Cir. 2001)) (first alternation in original). In Missouri, the time limits for filing an amended motion "are valid and mandatory." **Rutherford v. State**, 192 S.W.3d 746, 748 (Mo. Ct. App. 2006). Petitioner cites to no cases holding otherwise. Indeed, Petitioner attributes the default to her

---

[6]Rule 29.15(g) also specifically prohibits the incorporation by reference in an amended motion of material contained in any previously filed motion. Mo.S.Ct.R. 29.15(g). Identical language in the rule governing post-conviction motions following a guilty plea has been held not to apply to the physical attachment of earlier motions to an amended motion. See **Reynolds v. State**, 994 S.W.2d 944, 945-46 (Mo. 1999) (en banc).

post-conviction counsel's failure to physically attach her pro se motion to the amended motion. As the appellate court made clear, however, the failure was in the untimely filing of the attachment. This failure of post-conviction counsel does not excuse the resulting procedural default because "the actions of . . . post-conviction counsel cannot constitute 'cause' to excuse a procedural default . . . ." **Schawitsch**, 491 F.3d at 804; accord **Simpson**, 490 F.3d at 1033-34. See also **Interiano**, 471 F.3d at 856 (finding claims raised in petitioner's pro se post-conviction motion but not in amended motion filed by counsel to be procedurally barred).

For the reasons set forth above, Petitioner has also not established actual innocence.

Ground Four: Ineffective Assistance of Trial Counsel, Leave to Contact Jurors. Petitioner did present to the state courts her claim that her trial counsel was ineffective for failing to request leave of the trial court to contact the jurors about McCowan's relationship with a member of Henderson's family and Carothers's communications, if any, about her alleged knowledge of a prior conviction of Petitioner.

The Sixth Amendment right of the accused to the assistance of counsel is the right to *effective* assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). "Effective assistance is representation that 'play[s] the role necessary to ensure that the trial is fair.'" **Id.** (quoting Strickland v. Washington, 466 U.S. 668, 685 (1984)) (alteration in original). "To show a constitutional violation of the right to counsel a convicted defendant must show first, that

counsel's performance was deficient, and second, that counsel's errors prejudiced the defense." **Id.** (citing Strickland, 466 U.S. at 687).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). To establish prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 534 F.3d 857, 866 (8th Cir. 2008) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is one sufficient to undermine confidence in the outcome." **Garcia v. Bertsch**, 470 F.3d 748, 754 (8th Cir. 2006) (internal quotations omitted). The question of prejudice from counsel's performance need not be reached, however, if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

In the instant case, the state appellate court found that the potential jurors were not asked whether they knew any members of Henderson's family and were asked only whether Henderson's name sounded familiar. The court also found that McCowan did not recognize "Lulu" until she came into the courtroom during trial and did not know her last name. These

findings are presumed to be correct.  **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008); **Perry v. Kemna**, 356 F.3d 880, 883 (8th Cir. 2004).  See also **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004) ("A state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct.").

In **White v. Helling**, 194 F.3d 937 (8th Cir. 1999), the Eighth Circuit Court of Appeals rejected a habeas petitioner's claim that his trial counsel was ineffective in not exploring the issue of bias of a juror who did not disclose that she knew one of the courtroom's spectators, a sister of one of the victims, and who had talked with the spectator during the trial.  **Id.** at 940-41.  During a hearing held in chambers, the juror stated that she had known the spectator 18 years earlier, did not know she was related to the victim, and merely inquired about the health of the spectator's child.  **Id.** at 940.  The petitioner argued that trial counsel should have called the spectator to testify at the hearing.  **Id.** at 941.  The Eighth Circuit held that the state court had been correct in declining to find that "trial counsel's conduct [in not calling the spectator] was outside the bounds of normal competency."  **Id.**  The petitioner had also argued that the juror was in fact biased.  **Id.**  Later evidence developed by the petitioner indicated that the juror could not recall whether she had spoken with the spectator before or after she was selected to sit on the jury, the timing being relevant to the question whether the juror had concealed information on voir dire.  **Id.**  The state court had found the inconsistencies to be insufficient to establish bias.  **Id.**  The Eighth

Circuit agreed, concluding that the petitioner was "attempting to upset the judgment of a court of competent jurisdiction" and had failed in his attempt. **Id.**

Similarly, in the instant case, the information before trial counsel was that a juror recognized someone he vaguely knew after the trial began and that this someone turned out to be a relative of the victim. This scant information is insufficient to carry Petitioner's burden of showing that her trial counsel was not functioning as the counsel guaranteed her by the Sixth Amendment.

The state courts also rejected Petitioner's claim of ineffective assistance of counsel for not requesting leave of court to contact Carothers about any communications she might have had with jurors about Petitioner's alleged past record. Trial counsel learned of the possibility of such communications after the jury returned its verdict. The state appellate court found that evidence of any such communications would probably not have been admissible and that trial counsel had stated in his motion for new trial that Carothers had not said that she communicated her knowledge to other jurors.

The "well-founded and long-established rule" in Missouri that affidavits or testimony by jurors may not be used to impeach the jury's verdict applies to alternate jurors, but does not apply to the gathering of extrinsic evidence. **Storey v. State**, 175 S.W.3d 116, 130 (Mo. 2005) (en banc). As found by the state appellate court, however, there is no evidence that the alternate juror communicated the alleged evidence to the jury. There is no allegation of such in the motion for new trial.

This Court's review of the state courts's determination that trial counsel was not ineffective for not requesting leave to contact Carothers "is 'twice deferential: [the Court] appl[ies] a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'" **Link v. Luebbers**, 469 F.3d 1197, 1202 (8th Cir. 2006) (quoting Nooner v. Norris, 402 F.3d 801, 808 (8th Cir. 2005)). Under this twice deferential standard, Petitioner has failed to show that trial counsel was ineffective for not requesting leave to contact Carothers absent any evidence that she communicated her misinformation to members of the jury.

## Conclusion

For the foregoing reasons, Petitioner's § 2254 claims are procedurally barred or are without merit. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Vera Palmer is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this  15th  day of October, 2008.